IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
ALBANY DIVISION

UNITED STATES OF AMERICA, :
    Plaintiff, :
     :
v. : 1:05-CV-106 (WLS)
     :
$5,173.00 IN UNITED STATES :
CURRENCY, MORE OR LESS, :
    Defendant Property, :
     :
CEDRIC MATIVA WILLIAMS, :
    Claimant. :
_____:

## ORDER

Before the Court is Plaintiff's Motion for Summary Judgment. (Doc. 17). For the following reasons, Plaintiff's Motion for Summary Judgment (Doc. 17) is **GRANTED**.

## DISCUSSION

### I. Background

Plaintiff, the United States of America, filed a civil action, pursuant to 21 U.S.C. § 881(a)(6), naming Defendant property United States currency in the amount of $5,173. Plaintiff alleges that the Defendant currency was furnished or intended to be furnished in exchange for a controlled substance. (Doc. 1). Plaintiff moves for summary judgment on its claim. (Doc. 17).

### II. Summary Judgment Standard

Under Fed. R. Civ. P. 56, summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). An issue is "genuine" if the quantum and quality of proof necessary to support liability under the claim is raised. Allen v. Tyson Foods, 121 F.3d 642, 646 (11th Cir. 1997). A fact is "material" if it hinges on the substantive law at issue and it might affect the outcome of the nonmoving party's claim or defense.

Anderson v. Liberty Lobby, 477 U.S. 242, 248 (1986); *see also* Tyson Foods, 121 F.3d at 646. A judgment is appropriate "as a matter of law" when the nonmoving party has failed to meet its burden of persuading the Court on an essential element of the claim. *See* Cleveland v. Policy Management Sys. Corp., 526 U.S. 795, 804 (1999); Celotex Corp., 477 U.S. at 323.

The movant bears the initial burden of showing that there is no genuine issue of material fact. Celotex Corp., 477 U.S. at 323. The movant can meet this burden by presenting evidence showing there is no dispute of material fact or by showing, or by pointing out to, the district court that the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof. *Id.* at 322-24. Once the movant has met its burden, the nonmoving party is required "to go beyond the pleadings" and identify "specific facts showing that there is a genuine issue for trial." Celotex Corp., 477 U.S. at 324. To avoid summary judgment, the nonmoving party must do more than summarily deny the allegations or "show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).

On a motion for summary judgment, the Court must view all the evidence and all factual inferences drawn therefrom in the light most favorable to the nonmoving party and determine whether that evidence could reasonably sustain a jury verdict. Celotex Corp., 477 U.S. at 322-23; Tyson Foods, 121 F.3d at 646. However, the Court must grant summary judgment if there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c).

### III. Local Rule 56

Local Rule 56 requires the following from a respondent to a motion for summary judgment:

> The respondent to a motion for summary judgment shall attach to the response a separate and concise statement of material facts, numbered separately, to which the respondent contends there exists a genuine issue to be tried. Response shall be made to each of the movant's numbered material facts. All material facts contained in the moving party's statement which are not specifically controverted by the respondent in respondent's statement shall be deemed to have been admitted, unless otherwise inappropriate. M.D. Ga. R. 56.

Here, Plaintiff properly filed a motion for summary judgment in accordance with the Federal Rules of Civil Procedure and the Local Rules of this Court. (Doc. 17). In response, Claimant submitted a

response that was untimely under Local Rule 7.2–filed six (6) months after Plaintiff's motion. (Doc. 19). Additionally, Claimant's Response (Doc. 19) does not include an attached statement of material facts that Claimant believes to be in material dispute. Claimant, therefore, failed to properly dispute Plaintiff's material facts with the specificity required by the Rules.

Most jurisdictions state uncategorically that local rules operate with the force of substantive law. *See, e.g.*, Link v. Wabash Railroad Co., 291 F.2d 542 (7th Cir. 1961). In addition, some jurisdictions allow the granting of default judgments for failure to properly respond to a motion for summary judgment. If this were to have occurred, Plaintiff on that basis alone would have won summary judgment on its claim.

Rather than simply being a rule with a punitive effect if violated, Local Rule 56 is intended to instruct the parties on how best to assist the Court in identifying genuine material facts which are in dispute. With regard to granting motions for summary judgment based on a respondent's failure to properly respond, the Eleventh Circuit is more circumspect. The rule in this circuit is that local rules are binding on the parties, but the enforcement of the rule must be tempered with consideration of the circumstances. Cohen v. Carnival Cruise Lines, Inc., 782 F.2d 923 (11th Cir. 1986). A local rule cannot eviscerate a statutory right or conflict with the federal rules. Villano v. City of Boynton Beach, 254 F.3d 1302, 1310-11 (11th Cir. 2001). In the Eleventh Circuit, a district court cannot grant a motion for summary judgment based on default or as a sanction for failure to properly respond. *See* Trustees of Central Pension Fund of International Union of Operating Engineers and Participating Employers v. Wolf Crane Service, Inc., 374 F.3d 1035, 1039 (11th Cir. 2004). Thus, even if the Court were inclined by local rule to accept Plaintiff's statement of facts as true without examining the record or to grant Plaintiff's motion because Defendants have failed to properly respond, it cannot do so. This Court must make an independent review of the record before deciding Plaintiff's motion. It must be noted, however, that "[t]here is no burden upon the district court to distill every potential argument that could be made based upon the materials before it on summary judgment." Resolution Trust Corp. v. Dunmar Corp., 43 F.3d 587, 599 (11th Cir. 1995).

In this case, even the Eleventh Circuit's less stringent rule will not save Claimant. While more lenient in this circuit, Local Rule 56 still requires that Plaintiff's twenty-one (21) proffered

3

material facts be deemed admitted as Claimant clearly failed to directly address the same. To conclude otherwise would make the adversarial system essentially meaningless. It is not the Court's responsibility to expend valuable and limited resources and time to scour the record and compose a proper opposing statement of material facts. It is necessary for a responding party to submit a Statement of Material Facts which complies with Local Rule 56. Failure to adhere to the Local Rule of this Court with respect to responses to properly filed motions for summary judgment not only causes the Court undue burden, but such failure unnecessarily jeopardizes the survivability of claims or defenses.

IV.     **Factual Summary**

During the early part of 2005, officers of the Albany/Dougherty Drug Unit ("ADDU") received information from an anonymous tipster that Cedric Mativa Williams, a/k/a Short, was involved in the distribution of illegal drugs and was using his black two door Cadillac with a Hanson Motors drive out tag. The anonymous tipster also advised that "Short" was staying at the Sleep Inn on Dawson Road, and admitted to observing at least one of the drug transactions.

On February 17, 2005, ADDU Investigators went to the Sleep Inn to look for the black Cadillac; but it was not there. Investigators began checking motels in the area and observed Williams's black Cadillac pull to a stop at the rear of the Howard Johnson's Express Inn located at 2719 Point North Boulevard. A black male, later identified as Williams, left the vehicle, went to a room on the second floor of the hotel for a very short time, then drove away. Sgt. French and Officer Kirkpatrick of the ADDU stopped the Cadillac in the rear of the Albany Mall parking lot for displaying an improper dealer drive-out tag. The driver identified himself as Cedric Williams with a date of birth of August 30, 1979.

While Sgt. French waited for Williams's driver's license information to be returned by dispatch, Investigator Reynolds used a dog trained to detect the odor of narcotics to conduct a free air scan around the exterior of the Cadillac. The drug dog gave a positive alert to the passenger side door seam of the vehicle. Investigator Reynolds then conducted a probable cause search of the vehicle and found marijuana residue on the floor-board. Investigator Reynolds checked the trunk and found that the smell of raw marijuana coming from the trunk was overpowering. Williams's

4

driver's license check came back suspended and he was arrested for driving while license suspended or revoked. During a search of Williams's person, Sgt. French discovered two bundles of United States currency in Williams's front pockets, totaling $5,173.00. At a later time and under controlled conditions, Investigator Reynolds used the drug dog to conduct a scan of the currency and the dog gave a positive alert to the currency. At the time of the incident Williams was not employed. A criminal history records check of Williams revealed that he had prior arrests for narcotics violations.

On April 3, 2006, pursuant to a traffic stop and subsequent search of the vehicle, the Claimant was arrested for marijuana possession, giving a false name, and on several outstanding warrants, three of which were drug related. During the search of the vehicle, a total of $4,344.00 in U.S. currency was seized as drug proceeds. In connection with this arrest, an indictment was later returned by the Grand Jury in Criminal Case Number 1:06-CR-25 (WLS), in the District of Middle Georgia charging Claimant with knowingly and intentionally possessing marijuana. The currency seized was administratively forfeited on August 18, 2006. Claimant pled guilty before this Court on March 12, 2007 to one count of possession of marijuana with intent to distribute. U.S.A. v. Williams, 1:06-CR-25 (WLS), (Docs. 29, 30, 32). Claimant's sentence was affirmed by the United States Court of Appeals for the Eleventh Circuit on July 28, 2008. *Id.* at (Doc. 58).

**V.     Analysis**

Section 881(a)(6) of Title 21 states, "The following shall be subject to forfeiture to the United States and no property right shall exist in them: [a]ll moneys, negotiable instruments, securities, or other things of value furnished or intended to be furnished by any person in exchange for a controlled substance or listed chemical in violation of this subchapter, all proceeds traceable to such an exchange, and all moneys, negotiable instruments, and securities used or intended to be used to facilitate any violation of this subchapter." 21 U.S.C. § 881(a)(6). In April 2000, Congress enacted the Civil Asset Forfeiture Reform Act of 2000 ("CAFRA"), Pub.L. No. 106-185, 114 Stat. 202, codified in part at 18 U.S.C. § 983, which overhauled procedures for most federal civil forfeiture actions initiated after August 23, 2000, including those brought against property subject to forfeiture under 21 U.S.C. § 881(a)(6). 18 U.S.C. § 983. The Government initiated the forfeiture

5

in this case after the CAFRA became effective, on August 23, 2000; therefore, CAFRA governs. *Id*. Concerning the applicable burden of proof, the CAFRA provides:

> In a suit or action brought under any civil forfeiture statute for the civil forfeiture of any property--
>
> (1) the burden of proof is on the Government to establish, by a preponderance of the evidence, that the property is subject to forfeiture;
>
> (2) the Government may use evidence gathered after the filing of a complaint for forfeiture to establish, by a preponderance of the evidence, that property is subject to forfeiture; and
>
> (3) if the Government's theory of forfeiture is that the property was used to commit or facilitate the commission of a criminal offense, or was involved in the commission of a criminal offense, the Government shall establish that there was a substantial connection between the property and the offense. 18 U.S.C. § 983(c).

Plaintiff contends that the defendant currency is subject to forfeiture under 21 U.S.C. § 881(a)(6), because the currency at issue was found on Claimant during a search subsequent to arrest on February 17, 2005. Plaintiff argues that it has met its burden under 18 U.S.C. § 983(c) because several factors surrounding Claimant's arrest show a substantial connection between the U.S. currency in question and Claimant's distribution of narcotics. First, prior to Claimant's February 2005 arrest, an anonymous tipster notified officers of the ADDU that Claimant was involved in the distribution of illegal narcotics and using his black Cadillac to do so. Second, a trained drug dog gave a positive alert to the passenger side door seam of Claimant's vehicle. Third, at the time of Claimant's February 2005 arrest, officers discovered marijuana residue on the floorboard of his vehicle; and upon opening the trunk, one officer, Investigator Reynolds, was met by "the smell of raw marijuana" and found the smell "overpowering." Fourth, after Claimant's 2005 arrest, under controlled conditions, the trained drug dog gave a positive alert to the defendant U.S. currency.

Plaintiff also notes several additional supportive factors, which occurred after Claimant's 2005 arrest. Investigation after Claimant's 2005 arrest revealed that he was not employed at the time of the incident and that he had prior arrests for narcotics violations. On April 3, 2006, Claimant was arrested for possession of marijuana, giving a false name, and on several outstanding warrants, three of which were drug related. During the 2006 arrest, $4,344 was seized as drug proceeds. This U.S. currency was administratively forfeited on August 18, 2006.

6

Claimant argues that the currency seized in his 2005 and 2006 arrests were not the proceeds from illegal drug activities. Claimant states that the currency seized from the 2005 arrest was obtained from his mother, Linda Williams, in order to purchase a car for his sister. Claimant explains that his mother received the currency as a tax refund. Ms. Linda Williams[1] filed an affidavit in support of Claimant reiterating Claimant's explanation of the currency's source. Additionally, Ms. Williams attaches her federal and state income tax returns to show that she was due a federal refund in the amount of $4,813 and a state refund in the amount of $319, for a total of $5,132. This amount is only $41 shy of the amount seized from Claimant subsequent to his 2005 arrest. Concerning the currency seized after Claimant's 2006 arrest, Claimant alleges that these monies were proceeds he earned from working for "a man who owned a loan company" and "$2,500 . . . received from the sell [sic] of rims."

Based on the factors articulated by Plaintiff, the Court finds that the Plaintiff has met its burden of showing, by a preponderance of the evidence, a substantial connection between the U.S. currency at issue and the distribution of illegal drugs. First, the fact that Claimant was riding around with over five thousand dollars ($5,000) in his pocket while unemployed is persuasive. United States of America v. Two Parcels of Real Property, 92 F.3d 1123, 1128 (11th 1996). Second, the Court notes that Complainant's previous and post seizure drug related convictions are also persuasive. Id. Finally, "money upon which a narcotics dog 'alerts' is more likely to have come into contact with narcotics at some time in fairly recent past than money upon which a drug dog does not alert." United States v. $242,484.00, 389 F.3d 1149, 1166 (11th Cir. 2004). As the above factors were previously used in other cases to establish probable cause[2] of a substantial connection between seized property and an offense, the Court is satisfied that the same is sufficient to support a finding under the preponderance of the evidence standard.

Even though the Government has shown by a preponderance of the evidence that the currency in question is subject to forfeiture, summary judgment in Plaintiff's favor is not

---

[1] The Court notes here that it is significant that Ms. Williams, the alleged true owner of the currency in question, is not the claimant in the above captioned matter. Instead, her son Mr. Cedric Williams is the claimant.

[2] Prior to the enactment of the CAFRA, the Comprehensive Drug Abuse Prevention and Control Act ("CDAPC") established the Government's burden of proof as probable cause.

appropriate if Claimant offers uncontroverted evidence that the funds were obtained from legitimate sources, or that Ms. Williams was an innocent owner unaware of the currency's connection with drug sales. Two Parcels of Real Property, 92 F.3d at 1128. Unfortunately for Claimant, no such evidence has been provided here. Claimant has offered no support for his contentions concerning the monies seized subsequent to his 2006 arrest. Upon initial review, the evidence provided concerning the source of the currency seized subsequent to Claimant's 2005 arrest satisfy the requirements articulated above. However, upon closer review, the tax returns submitted to support Claimant's and Ms. Williams's contentions are dated February 4, 2006–a full year after Claimant's arrest. The Court is perplexed as to how a tax refund received after February 4, 2006 could be seized subsequent to an arrest in February 2005; such a feat would surely require the use of a famed DeLorean.[3] Plaintiff correctly notes, "[t]he mere allegation of a highly unlikely legitimate source of income without some support to give the allegation credibility cannot constitute an issue of material fact defeating summary judgment for forfeiture." Id. at 1129.

## CONCLUSION

For the aforementioned reasons, Plaintiff's Motion for Summary Judgment (Doc. 17) is **GRANTED**. The Court hereby **ORDERS** that **JUDGMENT** be entered in favor of Plaintiff and against Defendant currency.

**SO ORDERED**, this   16th   day of September, 2008.

      /s/W. Louis Sands      
**THE HONORABLE W. LOUIS SANDS,**
**UNITED STATES DISTRICT JUDGE**

---

[3] The DeLorean DMC-12, most commonly referred to as simply the "DeLorean," is a sports car, which was manufactured by the DeLorean Motor Company for the American market in 1981 and 1982. Wikipedia, *DeLorean DMC-12*, http://en.wikipedia.org/wiki/De_Lorean_DMC-12. The DeLorean first received mainstream notoriety when it appeared in the Back to the Future films, staring Michael J. Fox and Christopher Lloyd, as a homemade time machine. *Id*. *See also* BACK TO THE FUTURE (Universal Pictures 1985); BACK TO THE FUTURE II (Universal Pictures 1989) BACK TO THE FUTURE III; (Universal Pictures 1990).

8